Rel: August 1, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

––––––––––––––––––––

## CL-2025-0118 and CL-2025-0119

––––––––––––––––––––

### E.H.W.

v.

### J.E. and A.E.

### Appeals from Chilton Juvenile Court
### (CS-23-900153.00 and CS-23-900153.01)

FRIDY, Judge.

In appeal number CL-2025-0119, E.H.W. ("the mother") appeals from a judgment of the Chilton Juvenile Court ("the juvenile court") purporting to award custody of Av.E. ("the child"), a child born of a nonmarital relationship between the mother and J.E. ("the father"), to

An.E. ("the paternal grandfather"). In appeal number CL-2025-0118, the mother appeals from an interlocutory order of the juvenile court that makes findings of fact but does not dispose of all the competing custody claims in that action and, therefore, is not a final, appealable judgment. Because the juvenile court lacked subject-matter jurisdiction to enter the judgment appealed from in appeal number CL-2025-0119 and lacked subject-matter jurisdiction to enter the interlocutory order appealed from in appeal number CL-2025-0118, we dismiss both appeals, albeit with instructions to the juvenile court.

Background

On October 26, 2023, the father filed in the juvenile court a complaint naming the mother as the defendant and seeking emergency custody of the child. The father's complaint alleged that he had exercised physical custody of the child for the previous two years after the Chilton Circuit Court ("the circuit court") had awarded the paternal grandfather custody of the child in an action docketed by that court as case number DR-16-900215. The father's complaint further alleged that, on October 24, 2023, the circuit court had entered an order vacating its judgment awarding the paternal grandfather custody of the child; that, upon the

2

circuit court's entering its order vacating the judgment awarding the paternal grandfather custody of the child, the mother had gone to the child's school and taken custody of the child; that the mother had had little to no contact with the child before October 24, 2023, and, consequently, the child did not know the mother; that the mother was in a relationship with a man who had an extensive criminal history; that the mother had a history of using illegal drugs; and that it would be in the child's best interest to award the father emergency custody of the child. The father's complaint did not expressly allege that the child was dependent or that there was any other statutory basis supporting an exercise of subject-matter jurisdiction by the juvenile court. The juvenile court docketed the father's complaint as case number CS-23-900153.00 ("the .00 action").

On October 27, 2023, the mother filed a motion to dismiss the father's complaint on the ground that it did not allege a set of facts warranting an award of emergency custody. The juvenile court denied the mother's motion to dismiss on the same day it was filed. Also on October 27, 2023, the juvenile court held a hearing regarding the father's

claim seeking emergency custody, denied that claim, and awarded him visitation on alternating weekends.

In November 2023, the mother filed a motion asking the juvenile court to appoint a guardian ad litem to protect the child's interests. The juvenile court subsequently granted the mother's motion and appointed a guardian ad litem for the child.

On January 1, 2024, the father filed a motion in the .00 action asking the juvenile court to award him pendente lite custody of the child. On February 21, 2024, the father filed a pleading titled "Objection to Relocation and Petition for Custody." The juvenile court docketed that pleading as a separate action and designated it as case number CS-23-900153.01 ("the .01 action"). In his complaint in the .01 action, the father alleged that the mother had moved with the child to Prattville without giving him any advance notice. The complaint further alleged that the move was not in the child's best interest because, it said, the move would disrupt the child's life and separate her from all her friends who live in Verbena and would irreparably harm the father's relationship with the child. The complaint also alleged that the juvenile court should award custody of the child to the father because, it said, the mother's husband

4

was a perpetrator of domestic violence and used illegal drugs and the mother had failed to administer all of the child's medications. The complaint did not expressly allege that the child was dependent or that there was any other statutory basis for the juvenile court to exercise subject-matter jurisdiction over the .01 action.

On March 20, 2024, the juvenile court entered an order consolidating the .00 action and the .01 action. That order also noted that no order limiting the mother's relocation had been entered in either the .00 action or the .01 action; noted that, although the mother had moved before giving the father notice, she had moved less than sixty miles from her previous residence; noted that, although the mother had not told the father her new address in Prattville, the child's school had informed the father of the mother and the child's new address; ruled that father was entitled to daily telephone contact with the child without interference by the mother; ordered the mother to respond to the father's discovery requests within fourteen days; appointed a new guardian ad litem for the child; and authorized the father to visit with the child on holidays.

On August 8, 2024, the juvenile court entered an order reciting that the parties had commenced the trial of the consolidated actions but that

it had been continued after the paternal grandfather and G.E. ("the paternal grandmother") indicated that they wanted to intervene in the .01 action to seek custody of the child. On August 14, 2024, the paternal grandfather and the paternal grandmother filed a motion to intervene to seek custody of the child in the .01 action. That same day, the juvenile court granted the paternal grandfather and the paternal grandmother's motion to intervene.

On November 15, 2024, the juvenile court entered an order in both the .00 action and the .01 action reciting that the trial had been resumed and completed and that the juvenile court had taken the consolidated actions under advisement. On November 19, 2024, the juvenile court entered separate orders in the .00 action and in the .01 action in which it made findings of fact but did not adjudicate the parties' competing custody claims. On December 3, 2024, the juvenile court entered a final judgment in the .01 action but did not enter a corresponding final judgment in the .00 action. In pertinent part, the final judgment entered in the .01 action stated:

"The court finds as follows:

"1. [The p]arties were never married. Mother herein had a child, [B.M.], before she and the father got together.

6

Together [the father] and [the mother] had [the child] whose date of birth is [in] August … 2013.

"2. Both parents have a drug history and both [B.M. and the child] have been removed from these parents in the past. [The] Department of Human Resources has been involved with this family and [B.M. and the child].

"3. [The p]aternal grandfather, … no relation to [B.M.] by blood, got custody of [B.M.] and eventually adopted him. [B.M.] presently lives with [the paternal grandfather] and attends school in this county.

"4. [The paternal grandfather] received custody of [the child], and she resided with him for several years and eventually she migrated to her father, … and resided between [the] father and [the paternal] grandfather for several months, as [the father] resides in the yard and on the [paternal] grandfather's property.

"5. During the time the [paternal] grandfather had custody of [the child], she was involved in extracurricular activities and her grades were good and stable. The mother visited some over the years, but very little.

"6. That the best interest of the child … is to place her custody in [the] paternal grandfather ….

"ORDERED,

"1. That the custody of [the child] is placed with the Intervenor, [the paternal grandfather], subject to the visitation schedule provided herein.

"2. That the mother … shall have visitation with [the child] on the weekend commencing on the first Friday and third Friday of the month, for the weekend, returning [the] child to [the paternal grandfather] by 5:00 p.m. on the Sunday

7

of the weekend. Pick-up from the [paternal] grandfather at 5:00 p.m. on the first and third Friday afternoons.

"3. That the father shall have visitation with the child ... on the second Friday, for the weekend, and returning [the] child to [the paternal grandfather] by 5:00 p.m. on the Sunday of the weekend. [The] court notes that the father lives on the property of the [paternal grandfather] and sees [the] child at her residence.

"4. The father is to pay [the paternal grandfather] child support, monthly in the sum of $592.00 and [the mother] is to pay [the paternal grandfather] child support, monthly in the sum of $262.00, both to commence on December 15, 2024. [The f]ather is to provide medical insurance coverage and provide [the paternal grandfather] with an active insurance card for his use for [the child]."

In the judgment, the juvenile court did not make a finding either that the child was dependent or that there was any other statutory basis for the juvenile court to exercise subject-matter jurisdiction over the .01 action. By awarding the paternal grandfather sole physical custody of the child, the juvenile court's final judgment in the .01 action implicitly denied the custody claims of the mother, the father, and the paternal grandmother.

The juvenile court's November 19, 2024, order in the .00 action contains the same factual findings as those recited in the first four paragraphs of the judgment entered in the .01 action but does not contain the factual findings recited in paragraphs 5 and 6 of that judgment and

8

does not contain the language of that judgment adjudicating the competing custody claims. Moreover, the November 19, 2024, order in the .00 action did not make a finding either that the child was dependent or that there was any other statutory basis for the juvenile court to exercise subject-matter jurisdiction over the .00 action.

The mother subsequently filed postjudgment motions that were untimely. Thereafter, the mother timely appealed to this court.

<u>Jurisdiction of the Juvenile Court</u>

The parties have not questioned whether the juvenile court had subject-matter jurisdiction over the actions that resulted in the two appeals that are now before us, but jurisdictional matters are of such magnitude that we take notice of them at any time and do so even <u>ex mero motu</u>. See <u>K.C.G. v. S.J.R.,</u> 46 So. 3d 499, 501 (Ala. Civ. App. 2010).

Juvenile courts are courts of limited jurisdiction and have subject-matter jurisdiction only in matters in which the legislature has conferred such jurisdiction upon them by statute. <u>Id.</u> Neither the father's complaint in the .00 action nor his complaint in the .01 action alleged that the child was dependent or that there was any other statutory basis for the juvenile court to exercise subject-matter jurisdiction over those actions.

Moreover, the juvenile court denied the father's claim for emergency custody and did not make a finding that the child was dependent in either the .00 action or the .01 action. "A dependency action shall not include a custody dispute between parents." § 12-15-114(a), Ala. Code 1975; see K.C.G., 46 So. 3d at 503-04. For all that appears in the record, the .00 action and the .01 action were actions involving a pure custody dispute between the parents and the paternal grandfather of the child. A juvenile court does not have subject-matter jurisdiction over such disputes. See § 12-15-114(a) and K.C.G., 46 So. 3d at 503-04. Therefore, all the orders the juvenile court entered in the .00 action and all the orders and the judgment the juvenile court entered in the .01 action are void.

## Conclusion

Because neither the father's complaint in the .00 action nor his complaint in the .01 action alleged that the child was dependent or that there was any other statutory basis for the juvenile court to exercise subject-matter jurisdiction over those actions and because neither the orders entered in the .00 action nor the orders and judgment entered in the .01 action found that the child was dependent, the juvenile court did not have subject-matter jurisdiction over the .00 action and the .01

10

action. Therefore, all its orders entered in both actions and the judgment it entered in the .01 action are void for lack of subject-matter jurisdiction. Consequently, we dismiss the appeals with instructions to the juvenile court to vacate its orders and judgment in those actions and to dismiss both actions.

CL-2025-0118 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0119 -- APPEAL DISMISSED WITH INSTRUCTIONS.

Moore, P.J., and Hanson and Bowden, JJ., concur.

Edwards, J., concurs in the result, without opinion.